HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS, MARTIN P. GREY AND
EUGENE STEVENSON, VICE-CHANCELLORS.

63 371
r65 366

GILBERT COLLINS and HENRY C. WINTRINGHAM, executors of
Mary P. Wintringham, deceased,

*v.*

MARY WARDELL et al.

[Filed July 2d, 1902.]

1. A will directing the setting aside of a sufficient portion of testator's estate to produce an annual income of a certain sum, and directing a portion of the income be paid to a brother, and the remainder to another brother, and directing that, on the death of the brothers, the fund shall be

divided among other beneficiaries, and that either of such bequests shall lapse by the death of the beneficiary before the testator, requires the setting aside of sufficient property to produce the designated income, though one of the brothers dies before the testator, as the bequests of the *corpus* of the fund are not to take effect till the death of both life beneficiaries.

2. An executor required by will to set aside property sufficient to produce a certain income, must set aside an amount of property sufficient, in his judgment, in view of present and probable future conditions, to produce such income.

3. Judicial notice will be taken of the fact that the return on safe investments has been continually diminishing for many years.

4. A will directed executors to give a portion of the income of a certain fund to a brother for life, the remaining income to another brother for life, and each bequest was made subject to lapse if the brother to whom it was made died before testator ; and it was further directed that the capital be divided among certain beneficiaries on the death of both brothers. A subsequent clause directed the division of testator's estate among certain beneficiaries. One brother died before testator.—*Held*, that the beneficiaries in the capital of the fund were not entitled to a distribution thereof, less a sum sufficient to pay the annuity to the surviving brother, by agreeing to such a division, as the income of the fund not disposed of would pass to the residuary legatees, and not to the beneficiaries entitled to the fund.

Complainants, *pro sese.*

*Mr. William Brinkerhoff,* for the answering defendants.

MAGIE, CHANCELLOR.

The purpose of the bill filed in this cause is to obtain a construction of the fifteenth, sixteenth and seventeenth paragraphs of the will of Mary P. Wintringham, of which the complainants are the executors.

The paragraphs of the will in question are in these words:

"*Fifteenth.* I direct my executors hereinafter named, out of the residue of my estate, to set apart a fund sufficient to produce an income of six thousand dollars a year and out of said income to pay to my brother William Phyfe four thousand dollars a year and to my brother Duncan Phyfe two thousand dollars a year for the term of their lives, respectively, and after their death I direct the capital of said fund to be divided equally among the said Mary Wardell, Maria Wintringham, Thomas Wintringham, Joseph Wintringham, William Wintringham and Henry C. Wintringham.

"*Sixteenth.* It is my will that if any or either of the above-named legatees or devisees shall die before my death, the bequest to the person so dying shall lapse.

Collins *v.* Wardell.

"*Seventeenth.* All the rest, residue and remainder of my estate, real or personal, of or to which I shall die seized, possessed or in any way entitled, I do give, devise and bequeath to the said Emma P. Purdy, Mary Wardell, Emily Haight, Henry C. Wintringham, William Wintringham and to Franca Wintringham, grand-niece of my late husband, and the two children now living of the said Thomas Wintringham, to be divided equally among said persons, share and share alike, and I direct that any inheritance tax to be levied or charged against my estate be paid out of that portion thereof bequeathed in this paragraph."

The bill charges that William Phyfe, the brother of testatrix, named in the fifteenth paragraph, predeceased the testatrix; that complainants, having duly accounted in the orphans court of testatrix's domicile, have now in hand a clear residue of personalty amounting to $188,129.84; that of the persons named in the fifteenth paragraph, Thomas Wintringham also predeceased the testatrix, but all the others therein named survived her and are still living; that the complainant Henry C. Wintringham is one of the executors, and one of the persons named in the fifteenth paragraph, and also one of those named in the seventeenth paragraph of the will; and that while all the persons named in the seventeenth paragraph are still living, some of them are infants.

The grounds upon which the complainants seek the aid and direction of the court are expressed in the bill to be that one of the executors charged with the performance of the duties directed by the will is also a beneficiary under both the fifteenth and seventeenth paragraphs thereof, and, as some of the beneficiaries under the seventeenth paragraph are infants, complainants are unwilling to assume the responsibility of determining the amount of the fund to be set apart under the provisions of the fifteenth paragraph.

Complainants also declare, by their bill, their willingness to surrender the trust under the fifteenth paragraph, and make immediate distribution to the parties entitled thereto of the fund therein to be set apart, except so much as is necessary to secure the annuity to Duncan Phyfe, who is still living, at the age of over eighty-two years. The answers admit the facts stated in the bill.

The prayers of the bill are that the will may be construed

and complainants may be advised and directed how much to set apart as a trust fund, under the fifteenth paragraph, and how much to reserve as security for the annuity to Duncan Phyfe.

Under the facts thus admitted it is obvious that the complainants are entitled to the aid, advice and direction of the court in the matter, and there has been no contention to the contrary.

The contention on the part of the answering defendants has been that since William Phyfe died during the lifetime of the testatrix, and therefore became incapable of taking the annuity of $4,000 provided for him by the fifteenth paragraph of the will, the fund directed to be set apart by its provisions should be diminished to so much as will suffice to provide the annuity to Duncan Phyfe, and all over that amount should fall into the residue provided for by the seventeenth paragraph.

I am unable to construe the language of testatrix in the fifteenth paragraph in accordance with this contention. On the contrary, I think the plain intent disclosed thereby was that the fund directed to be set apart was not only to answer for and provide the annuities to her two brothers, but, at a future period, to be divided among the persons to whom she specifically bequeathed it by the last clause of the paragraph. The death of William Phyfe before the testatrix cannot operate to defeat the gift of the fund, or so much of it as was given to the specific legatees thereof.

It results that complainants are, by these express provisions, required, notwithstanding the death of William Phyfe, to set apart so much of the residue now in their hands as would be reasonably sufficient, when properly invested, to furnish an income of at least $6,000 a year. In making this determination complainants must exercise a judgment based upon present conditions and the probable future conditions for investment. It is a matter which may be judicially noticed that the return upon safe investments has been continually diminishing for many years. In the revision of the rules, lately made, this court has felt obliged to recognize the changed conditions, and to provide

Collins *v.* Wardell.

that the values of life interests should be fixed upon the rate of four per cent. returns. In the absence of evidence, I do not think I can judicially determine what amount should be set apart to raise $6,000 annually during the probable period of the life of Duncan Phyfe; the most that I can say is that complainants ought not to set aside less than $150,000 for that purpose.

It is proper to add that the interest of the beneficiaries in the fund, when set apart under the fifteenth paragraph, became vested, at the death of testatrix, in all those who survived her. The share of Thomas Wintringham, who predeceased her, by the provisions of the sixteenth paragraph, lapsed. This fell into the residue, to be disposed of by the seventeenth paragraph. No other construction can be given to the direction that such share should lapse.

A more difficult question arises upon complainants' suggestion that they are willing to surrender their trust under the fifteenth paragraph, and immediately distribute among those entitled thereto so much of the fund as is not necessary to secure the annuity to Duncan Phyfe, and their request for direction in respect thereto. It involves the consideration of the period when the beneficiaries under that paragraph are entitled to come into possession of the fund vested in such of them as survived testatrix, and what, at that period, is to be divided and distributed among them.

While the annuities to testatrix's two brothers were given to them for the terms of their lives, respectively, the period of distribution to those in remainder was fixed by the phrase "after their death." I am unable to construe this language as permitting the severance of the fund, and the distribution of a part thereof, upon the death of one of the annuitants. On the contrary, I think the period is thereby fixed by the death of the survivor of the two brothers, for at a no earlier period could the phrase "their death" apply.

As, however, all the beneficiaries named in the last clause of the fifteenth paragraph are of age, complainants might, perhaps, advance to them so much of the fund, if, at the period of distri-

bution, such beneficiaries would be entitled to the fund and its accumulations.

Where a life interest in a fund is prevented from being operative, as, for example, by the refusal of a widow to accept a devise in lieu of dower (*Macknet* v. *Macknet, 9 C. E. Gr. 277; Beideman* v. *Sparks, 16 Dick. Ch. Rep. 226*), or by devise or bequest being void because the beneficiary had incautiously become a witness to the will (*Jull* v. *Jacobs, L. R. 3 Ch. Div. 703*), the devise or bequest in remainder is said to be accelerated, and the remainderman will be entitled to come into possession at once, or to receive the income or accumulation thereof.

But, in my judgment, the will before me does not admit of the application of this doctrine. It requires the setting apart of a fund, and expressly provides what shall be done with the income thereof during the joint lives of the annuitants. It does not provide for the distribution of the income which would otherwise pay the annuity of one who died, but expressly provides for distribution at the death of the survivor. It must have been within the contemplation of testatrix that one of the annuitants would die before the other. The absence of any provision as to the income which would be thus released is significant of testatrix's intent. When, therefore, she expressly provides for the distribution, not of the fund, which might include accumulations, and declares that what is to be divided is the "capital of said fund," I feel obliged to conclude that the right of the ultimate beneficiaries under the fifteenth paragraph is limited to *capital,* in distinction to *income,* and that accumulations of the fund pending the period of distribution are not disposed of under the fifteenth paragraph, but fall into the residue, and are disposed of under the seventeenth paragraph.

It results that there should be no direction of a present distribution of any part of the fund when set apart under the fifteenth paragraph.

A decree will be made in conformity with these views, and complainants may have their costs out of the fund, with a counsel fee to be fixed on application.